**ANTHONY P. CAPOZZI, CSBN: 068525**
**LAW OFFICES OF ANTHONY P. CAPOZZI**
1233 W. SHAW AVE., SUITE 102
FRESNO, CALIFORNIA 93711
PHONE: (559) 221-0200
FAX: (559) 221-7997
EMAIL: Anthony@capozzilawoffices.com
www.capozzilawoffices.com

ATTORNEY FOR Defendant,
SAWTANTRA CHOPRA

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
* * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br><br>SAWTANTRA CHOPRA,<br><br>Defendant. | Case No.: 1:18-CR-00086-LJO-SKO<br><br>**MEMORANDUM REGARDING 18 U.S.C. § 4241(d)**<br><br>Date: **January 21, 2020**<br>Time: **8:30 a.m.**<br>Courtroom: **4** |

**TO:  THE HONORABLE COURT AND TO THE ASSISTANT UNITED STATES ATTORNEY:**

Defendant, Sawtantra Kumar Chopra, by and through his counsels of record, Michael Chaney and Anthony P. Capozzi, hereby submit this memorandum regarding Mr. Chopra's competency and appropriate placement.

**<u>BRIEF INTRODUCTION</u>**

Reports from two psychiatrists have been submitted to the court. Both conclude that defendant Chopra is not presently competent to stand trial. In a recent email to the court and counsel, AUSA Vincenza Rabenn correctly stated that, "both parties have agreed that at this time, the defendant is not competent to stand trial." Thus, the sole dispute between the parties is how best to fulfill the mandate of 18 U.S.C. § 4241 (d). Should the defendant, without

reflection, and in mechanical fashion, simply be committed to the custody of the Attorney General as the prosecution requests, even though the prosecution's handpicked expert states that to do so would be highly counter-productive? Or should the defendant be evaluated and cared for in a manner that increases the possibility of his return to competency. A more detailed discussion of this issue is presented below.

## FACTUAL OVERVIEW

Sawtantra Kumar Chopra is charged by Indictment with Distributing and Dispensing a Controlled Substance in violation of 18 U.S.C. § 841(a)(1) and 841(b)(1)(c).

At the request of the defense, Dr. Chopra was given a Forensic Psychiatric Evaluation by Howard B. Terrell, M.D. on July 5, 2019. Dr. Terrell issued a written report finding Dr. Chopra is suffering from early onset dementia and is not mentally competent to stand trial.

Dr. Terrell detailed the multiple medical problems from which Dr. Chopra is suffering, separate and apart from his symptoms of dementia. Dr. Terrell had grave concerns that Dr. Chopra would not have access to adequate medical, neurological and psychiatric care within the Federal Bureau of Prisons.

Because of the early onset dementia concern, Dr. Terrell filed a confidential morbidity report with the Stanislaus County Department of Public Health pursuant to Title 17 of the California Code of Regulations. (HBT Rpt. pages 20-21).

On October 4, 2019, Dr. Terrell filed a supplemental report based on information received from Lorenzo Aguilar, M.D., Dr. Chopra's neurologist. Dr. Aguilar had diagnosed "rapidly progressive dementia accompanied by … increasing clumsiness, gait abnormality, sudden jerking body movements, as well as … increasing depression, anxiety, vision problems, and occasional stiffness in his arm and leg."

Dr. Terrell found it extremely likely that Dr. Chopra is suffering from dementia, with a poor prognosis for recovery.

A.A. Howsepian, M.D., Ph.D. a licensed psychiatrist, was hired as an expert by the government. He examined Dr. Chopra on December 13, 2019, and issued a 40-page report on

January 10, 2020. Dr. Howsepian also found Dr. Chopra mentally incompetent albeit for reasons other than those cited by Dr. Terrell.

On page two of his supplemental report, under the "Forensic Opinion" heading, Dr. Howsepian stated that Dr. Chopra is **not presently mentally competent to stand trial** due to, *inter alia,* a dissociative disorder resulting in *pseudodementia*. (AAH Rpt. page 2)

Moreover, on pages 39 and 40 of his report, Dr. Howsepian concludes:

> I seriously doubt, therefore, that Dr. Chopra will improve to an adequate degree with any treatment (whether psychotherapeutic or psychopharmacological) in a manner that he would be restored to competency to stand trial, *unless* he were hopeful that such a trial would relieve the senses of threat that he faces. Rather, significant improvement — in fact *resolution* of his symptoms — will likely come only by a psychologically satisfactory resolution of his legal case or with genuine hope that such resolution is a likely eventuality for him. No psychiatric medications will treat this condition at its root. His anxiety and depression can, of course, be partially treated, as they have been with anti-anxiety and antidepressant medications, but no psychiatric medication will resolve his memory deficits and, again, as has already been the case, some of these medications have problematic side effects of their own (including hallucinations, worsening of possible underlying OSAH, and worsening confusion). Psychotherapy (including, in Dr. Chopra's specific case, hypnotherapy) itself also would not be predicted to help resolve Dr. Chopra's condition. For Dr. Chopra, to be incarcerated — to be separated from his family whom he so loves and depends upon, while remaining in the psychological and physical condition he is in, suffering, as he is, from multiple chronic medical illnesses, and having to languish in a correctional facility — is emotionally intolerable for him in the extreme, so much so, that Dr. Chopra has, involuntarily, generated a series of genuine, disabling, and perplexing cognitive symptoms, in conjunction with emotional and behavioral impairments, that constitute an unconscious, unintentionally generated psychological strategy, a way of potentially escaping the intolerable, emotionally overwhelming situation in which he might find himself, if incarcerated. As he said to me, he would prefer to die than to be incarcerated. If, on the other hand, Dr. Chopra's exposure to incarceration were to be minimized, or avoided altogether- or if he at least had the hope that this would be so - his symptoms are highly likely to resolve.

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

Title 18 United States Code section 4241(d) states in pertinent part:

> The Attorney General shall hospitalize the defendant for treatment in a **suitable facility** –
>> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

Title 18 United States Code section 4241(a)(2) defines "**suitable facility**" as a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant.

Title 18 United States Code section 4247(i) Authority and Responsibility of the Attorney General.

> The Attorney General –
> (a) may contract with a state, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter;
> (b) may apply for the civil commitment pursuant to state law, or a pursuant committed to his custody pursuant to sections 4243, 4246 or 4248;
> (c) shall before placing a person in a facility pursuant to the provisions of sections 4241, 4243, 4244, 4245, 4246 or 4248, consider the suitability of the facility's rehabilitation progress in meeting the needs of the person.

## ARGUMENT

In *United States v. Sherman,* 722 F. Supp. 504 (No. Dt. Ill. 1959) the defendant was found incompetent. The court thought it had no choice but to follow 18 U.S.C. § 4241(d) and ordered the defendant to the custody of the Attorney General. However, section 4241(d) becomes ambiguous when it states "**[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility**" not to exceed four months.

Hospitalize did not necessarily mean, "to place in a hospital as a patient." *Id. at* 505. Testimony had been presented indicating that in some cases, institutionalizing a defendant may

4
MEMORANDUM REGARDING 18 U.S.C. § 4241(d)
CASE NO.: 1:18-CR-00086-LJO-SKO

## MEMORANDUM OF POINTS AND AUTHORITIES

Title 18 United States Code section 4241(d) states in pertinent part:

> The Attorney General shall hospitalize the defendant for treatment in a **suitable facility** –
>> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

Title 18 United States Code section 4241(a)(2) defines "**suitable facility**" as a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant.

Title 18 United States Code section 4247(i) Authority and Responsibility of the Attorney General.

> The Attorney General –
> (a) may contract with a state, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter;
> (b) may apply for the civil commitment pursuant to state law, or a pursuant committed to his custody pursuant to sections 4243, 4246 or 4248;
> (c) shall before placing a person in a facility pursuant to the provisions of sections 4241, 4243, 4244, 4245, 4246 or 4248, consider the suitability of the facility's rehabilitation progress in meeting the needs of the person.

## ARGUMENT

In *United States v. Sherman,* 722 F. Supp. 504 (No. Dt. Ill. 1959) the defendant was found incompetent. The court thought it had no choice but to follow 18 U.S.C. § 4241(d) and ordered the defendant to the custody of the Attorney General. However, section 4241(d) becomes ambiguous when it states "**[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility**" not to exceed four months.

Hospitalize did not necessarily mean, "to place in a hospital as a patient." *Id. at* 505. Testimony had been presented indicating that in some cases, institutionalizing a defendant may

lead to permanent harm. *Id. at* 506.

The court cited 4241(d), which mentions "**treatment in a suitable facility.**" Section 4247(a)(2) defines "suitable facility" as a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant.  Section 4247(i)(c) requires the Attorney General, "before placing a person in a facility pursuant to … section 4241 to consider the suitability of the facility's rehabilitation progress in meeting the needs of the person." *ibid*.

The court stated that Congress' repeated emphasis on suitable facilities in these provisions indicates that it did not intend the Attorney General automatically to put mentally incompetent defendants into a hospital upon a judicial finding of incompetency. Rather, Congress intended that the Attorney General be mindful of the specific needs of each particular defendant in pursuit of maximizing the likelihood of a return to competency to stand trial. *ibid*.

In *United States v. Strong* 489 F.3d 1055 (9th Cir. 2007), the defendant was found incompetent to stand trial and the District Court committed him to the custody of the Attorney General for treatment and restoration pursuant to 18 U.S.C. § 4241(d). The defendant appealed, claiming that this process required mandatory confinement without giving the District Court an opportunity to assess a defendant's individualized circumstances. The court ultimately upheld the process, but while awaiting transfer to Butner, North Carolina medical facility, the court permitted the defendant to remain at a local inpatient treatment facility.

The court indicated that section 4241(d) limits a criminal defendant's initial commitment for incompetence to a period of no more than four months. *Id. at* 1062. The statute also provides a flexible mechanism through which the defendant could gain early release – namely, through regaining competency prior to the conclusion of the four month period, or through an appropriate medical determination that there is no "substantial probability" that the defendant could be restored to competency in the "foreseeable future." *Id. at* 1062.

The court noted, however, that the overarching purpose of commitment under section 4241(d) is to enable medical professionals to accurately determine whether a criminal defendant is restorable to mental competency. *Id. at* 1062.

In this regard, it should be noted that Dr. Howsepian was emphatic in stating that such a commitment in the instant case would be markedly counter-productive.

> For Dr. Chopra, to be incarcerated — to be separated from his family whom he so loves and depends upon, while remaining in the psychological and physical condition he is in, suffering, as he is, from multiple chronic medical illnesses, and having to languish in a correctional facility — is emotionally intolerable for him in the extreme….If, on the other hand, Dr. Chopra's exposure to incarceration were to be minimized, or avoided altogether- or if he at least had the hope that this would be so - his symptoms are highly likely to resolve. (AAH Rpt. pages 39-40)

Thus, clearly, it is Dr. Howsepian's opinion that simply putting Dr. Chopra in the custody of the Attorney General would defeat the stated goal of 18 U.S.C. § 4241(d), and all but guarantee that his condition would worsen.

In accordance with Dr. Howsepian's conclusions, and factoring in Dr. Chopra's myriad medical problems, it appears that there is no "substantial probability" that he could be restored to competency in the foreseeable future within the meaning of 18 U.S.C. § 4241. Thus, it is respectfully requested that the court so find.

In the alternative, and in the spirit of 18 U.S.C. § 4241, the court might consider placing Dr. Chopra in the constructive custody of the Attorney General and, as in the *Sherman* case (722 F. Supp. 504 (No. Dt. Ill. 1959)), consider permitting Dr. Chopra's current treatment regimen to continue. After all, no group of doctors knows the defendant, his illnesses, his medication needs, and his prognoses better than those who have been treating him on an ongoing basis.

DATED:   January 15, 2020        By: */s/Anthony P. Capozzi*
                                      ANTHONY P. CAPOZZI
                                      Attorney for Defendant SAWTANTRA CHOPRA

DATED:   January 15, 2020        By: */s/Michael D. Chaney*
                                      MICHAEL D. CHANEY
                                      Attorney for Defendant SAWTANTRA CHOPRA